FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2016 MAR 27 PM 2: 55
CLERK
SO. DIST. OF GA.

# United States District Court
## for the Southern District of Georgia
### Savannah Division

MALLIE J. SECKINGER,                )
                                     )
    Plaintiff,                      )
                                     )
v.                                   )    CV 415-304
                                     )
EQUIFAX INFORMATION                  )
SERVICES, LLC,                       )
                                     )
    Defendant.                      )

**ORDER**

Defendant Equifax Information Services, Inc. moves for summary judgment on Mallie Seckinger's Fair Credit Reporting Act (FCRA) claims. Doc. 44. Seckinger opposes. *See* docs. 46, 50, & 54. The dispute, however, rests largely on Seckinger's misunderstanding of the relevant legal principles and procedures. Since Seckinger is proceeding *pro se*, some clarifying foundational discussion of those principles and procedures is warranted.

## I.   BACKGROUND[1]

In 2013, Seckinger noticed a change in the credit available

---

[1] In deciding the motion, the Court views the evidence and draws all reasonable inferences in favor of the nonmovant, Seckinger. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

to him. *See* doc. 47 at 2, ¶ 5 (Seckinger's Statement of Material Facts). He investigated, by requesting information from Equifax, and discovered that his credit information included a loan whose legitimacy was "formally in dispute since May 8, 2013." *Id.* at 2, ¶¶ 6, 9. He notified Equifax of the dispute, pursuant to the provisions of 15 U.S.C. § 1681i, in January 2014. *Id.* at 3, ¶ 10; doc. 43 at 2, ¶ 8 (Equifax's statement of material facts reflecting receipt of dispute letter on January 19, 2014). He requested further "reports"[2] from Equifax in 2014, and in each Equifax included the disputed loan but failed to include the FCRA-required notice of consumer dispute. *Id.* at 3, ¶¶ 11, 13; *see also* 15 U.S.C. § 1681i(c) (requiring, after a notice of dispute is provided by a consumer, that "any subsequent consumer report containing the information in question [shall] clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."). He filed this action in November 2015. *See* doc. 1 (Complaint).

In 2016, Seckinger applied for a credit card from Wells

---

[2] As discussed below, the proper FCRA-characterization of the information Equifax provided to Seckinger is disputed. Outside of the technical discussion of that dispute, the Court uses the term "report" colloquially -- referring generally to the compilation of information related to a consumer's creditworthiness, whether provided directly to the consumer or to some third party.

AO 72A
(Rev. 8/82)

Fargo Bank, and Equifax provided Wells Fargo a report that, he contends, "failed to clearly note that the loan in question was disputed . . . and failed to provide either [his] statement or a clear and accurate codification or summary thereof." Doc. 47 at 5, ¶ 18. Allegedly because of that failure, his application was denied. *Id.* at 5, ¶ 19. Wells Fargo notified him of its decision in a letter ("the Letter"). *Id.*[3]

Equifax contends that it is entitled to summary judgment because Seckinger has failed to offer any evidence that it generated a "consumer report," as defined by the FCRA, containing information about the disputed loan without the required dispute notice. *See* doc. 44 at 8. Since it contends there is no evidence of *any violation* of the FCRA, there is clearly no evidence of a *willful violation*. *Id.* at 13-14. Seckinger contends that the Wells Fargo Letter raises a jury question whether (if it does not prove outright that) Equifax provided a report without noting the dispute. Doc. 46 at 12-13 (arguing the Letter "establishes the fact that Equifax [p]rovided at least 1 Credit Report containing the information

---

[3] The alleged violations occurring after the Complaint was filed in 2015 are not before the Court. The Court denied Seckinger's motion to amend his Complaint. *See* doc. 38. However, as explained below, Seckinger contends that the Letter is evidence that Equifax had not, as of its date, included information about his dispute of the loan on his credit report. Accordingly, the Court considers the letter's evidentiary value, if not the alleged violation.

AO 72A
(Rev. 8/82)

in question subsequent to receiving Plaintiff's Dispute Statement without clearly noting that it is disputed and Equifax also failed to provide either the consumer's statement or a clear and accurate codification or summary thereof in subsequent credit reports."). He also contends that the information that Equifax provided to him (the Equifax Information) both itself constitutes a report without a dispute reference and also reflects deficient reports to third parties. *See* doc. 46 at 9 (relying on report from Equifax to Seckinger, dated December 4, 2014).

## II. ANALYSIS

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact' and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Its intent is "to isolate and dispose of factually unsupported claims or defenses. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. It, therefore, must be supported by evidence that will be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2) (allowing objection "that material cited to support or dispute a fact cannot be presented in a form that would be admissible in

4

evidence."). The admissibility of evidence is determined by the Federal Rules of Evidence. *See Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997) ("the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence.").

Substantively, a factual dispute is "material" if it concerns "facts that might affect the outcome of the suit under the governing law . . . ." *Anderson*, 477 U.S. at 248. "The materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, the Court must look to the FCRA to determine what facts are material to Seckinger's claim.

The FCRA (15 U.S.C. § 1681, *et seq.*) requires that "consumer reporting agencies adopt reasonable procedures" to ensure "proper utilization" of information used in consumer credit transactions. 15 U.S.C. § 1681. Among various particular requirements is the obligation, triggered in part by a consumer's notice of disputed credit report information, to note clearly "in any subsequent consumer report containing the information in question, . . . that it is disputed by the

consumer and provide either the consumer's statement [regarding the dispute] or a clear and accurate codification or summary thereof." 15 U.S.C. § 1681i(b). "The FCRA creates a private right of action against consumer reporting agencies for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of any duty imposed under the statute." *Collins v. Experian Info. Sols., Inc.*, 775 F. 3d 1330, 1333 (11th Cir. 2015) (citing *Safeco Ins. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Willfulness, in the FCRA context, implies a state of mind that encompasses both knowing and reckless violations. *See Safeco Ins. Co. of Am.*, 551 U.S. at 57-58.

Seckinger alleges that Equifax willfully violated the FCRA's provisions concerning consumer-disputed information. He explains that his "law suit specifically focuses upon *and is limited to* the failure of the Defendant to include the consumer[']s 'statement of dispute' in subsequent credit reports of which the Defendant is clearly in willful noncompliance with the law." Doc. 3 at 8 (emphasis added).[4] Equifax contends that,

---

[4] This Court construes *pro se* pleadings liberally, but that liberality does not allow it to act as *de facto* counsel. *See, e.g., Lacy v. BP P.L.C.*, ___ F. App'x ___, 2018 WL 500152 at * 1 (11th Cir. Jan. 22, 2018) (citing, *inter alia, Campbell v. Air Jamaica Ltd.*, 760 F. 3d 1165, 1168-69 (11th Cir. 2014)). In particular, it may not "'rewrite a deficient pleading in order to sustain an action.'" *Id.* (quoting *Campbell*, 760 F. 3d at 1169)). While it is not absolutely clear to the Court that the identified theory exhausts the possible theories of Equifax's

AO 72A
(Rev. 8/82)

because he has offered no evidence that it generated any consumer report, it could not have willfully failed to include his notice of dispute in any such report. Doc. 44 at 13-14.

**A. The Wells Fargo Letter**

Seckinger contends, first, that the Wells Fargo Letter "establishes as fact that Equifax [p]rovided at least 1 [c]redit [r]eport containing the information in question subsequent to receiving [p]laintiff's Dispute Statement without clearly noting that it is disputed by the consumer . . . ." Doc. 46 at 12. Equifax responds that the Letter is inadmissible hearsay. Doc. 49 at 5. Seckinger strenuously objects to Equifax's evidentiary challenge. *See* doc. 50 at 5 ("It is no longer a question of whether the evidence exists, it is now a question of if the evidence meets Local Rules [based upon the Defendant's Opinion], lacks a citation to the record [ignoring the Declaration of Sally Seckinger], weather it is a narrative or not [based upon the Defendant's opinion], weather the adduced documents are authentic by declaration of affidavit and the question as to ***IF*** the adduced documents should be stricken from the record and not considered by the Court." (spelling, emphasis, and bracketed material in original)). Seckinger's outrage is misplaced.

---

liability under § 1681i, Seckinger's language leaves no room to doubt his limiting intent.

AO 72A
(Rev. 8/82)

*1. Admissibility*

The question Equifax raises is whether the Wells Fargo Letter is admissible as evidence. Inadmissible evidence is not properly part of the record for summary judgment purposes. *See, e.g.,* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, *et al.,* 10A Fed. Prac. & Proc. Civ. § 2724 (4th ed. 2017) (extent of summary judgment record depends, in part, on whether particular material is admissible evidence). The question, therefore, is whether Seckinger has presented the Letter in a way that allows the Court (and ultimately a jury) to consider it. That question touches upon, but certainly is not limited to, the Letter's authenticity. *Cf.* doc. 50 at 6 (responding to Equifax's objection that the Letter is inadmissible by stating: "The plaintiff can only conclude, and rightfully so, that Defendant is accusing the plaintiff of counterfeiting the Adduced Wells Fargo document . . . ."). Admissibility depends not upon the opinion of defendant's counsel, or even this Court's Local Rules, but upon the Federal Rules of Evidence.

The Federal Rules of Evidence define "hearsay" as "a statement" made by a "declarant" who is not "testifying at the current trial or hearing" offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(a)-(c) (defining "hearsay" and constituent terms). Obviously the Letter is not trial testimony. Equally clear is

Seckinger's intent that its statements constitute proof of the matters asserted (*i.e.*, that Wells Fargo denied him credit on or near the Letter's September 2016 date based upon information contained in a report provided to it by Equifax). *See* doc. 46 at 12-13 (arguing that the Letter creates a dispute of material fact); *id.* at 15 (Letter's statement that denial of credit application was "based in whole or in part on information in a consumer report (often called a credit report) from . . ." Equifax). The Letter's statements, therefore, are hearsay, and "[h]earsay is not admissible," unless a federal statute, the Rules of Evidence themselves, or "other rules prescribed by the Supreme Court" provide an exception. Fed. R. Evid. 802.

There are numerous exceptions to the prohibition on hearsay. *See, e.g.,* Fed. R. Evid. 803 (Exceptions to the Rule Against Hearsay -- Regardless of Whether the Declarant is Available as a Witness); Fed. R. Evid. 804 (Exceptions to the Rule Against Hearsay -- When the Declarant is Unavailable as a Witness); Fed. R. Evid. 807 (Residual Exception). Neither party has presented any evidence or argument that the Letter's author (a Mr. Dee, Senior Vice President of Wells Fargo's Loan Operations) is unavailable as a witness. *See* doc. 50 at 6-9 (responding to Equifax's challenge of the Wells Fargo Letter); *see also* Fed. R. Evid. 804(a) (specifying criteria for finding a declarant "unavailable"). Thus, the Letter's admissibility

9

depends upon the application of a general exception or the residual exception.[5]

Among the general exceptions to the hearsay prohibition, the most likely to be applicable to the Letter is the exception for records of a regularly conducted business activity, the so-called "business records exception." Fed. R. Evid. 803(6). In order for that exception to apply, however, the proponent must show that: (1) "the record was made at or near the time [of the fact stated] by -- or from information transmitted by -- someone with knowledge; (2) the record was "kept in the course of a regularly conducted activity of a business . . ."; and (3) "making the record was a regular practice of that activity."

---

[5] Seckinger does not offer *any* argument concerning the application of a hearsay exception to the Letter. *See* doc. 50 at 6 ("The Plaintiff can only conclude, and rightfully so, that the Defendant is accusing the Plaintiff of counterfeiting the Adduced Wells Fargo document . . . ."). As discussed above, the issue is not whether Seckinger "counterfeited" the document but whether he has provided the foundation for its admissibility. The burden to satisfy the requirements of an exception to the rule against hearsay is on the proponent of the evidence. *See, e.g., United States v. Kennard*, 472 F.3d 851, 855 (11th Cir. 2006). Because he misunderstands Equifax' objection, Seckinger has not asserted an exception, much less provided the basis for its application. Based solely on that omission, then, the Letter might be deemed inadmissible. However, given that he is acting *pro se*, the Court must liberally construe his response. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curaim*) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). The Court thus considers whether he has provided sufficient foundation, despite his misunderstanding of the issue, to establish the application of a hearsay exception.

10

Fed. R. Evid. 803(6)(A)-(C). Each of those facts must be established by the testimony or certification of the "custodian" of the record. Fed. R. Evid. 803(6)(D).

Equifax points out, and Seckinger identifies nothing that contradicts, that no adequate foundation is apparent in the record.[6] *See* doc. 49 at 5 (noting that Seckinger "did not obtain declarations from Wells Fargo Bank to authenticate or explain the document, and discovery has now closed."); doc. 50 at 7-8 (responding that "there is no need to have declarations from Wells Fargo as the document speaks for itself in clear unambiguous language which is not open to after the fact interpretation relying on the unreliable memories of human beings."). In the absence of an adequate foundation to apply the business records exception, the Letter remains inadmissible hearsay.

---

[6] Seckinger refers to his wife Sally Seckinger's declaration in his response. *See, e.g.,* doc. 50 at 8. Since Mrs. Seckinger does not have direct personal knowledge of the circumstances of the Letter's preparation, she can't establish the necessary foundation. Affidavits or declarations, after all, "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Additionally, the affidavit . . . must state the basis for such personal knowledge." *Duke v. Nationstar Mortg., L.L.C.,* 893 F. Supp. 2d 1238, 1244 (N.D. Ala. 2012) (citing *Bruce Const. Corp. v. United States*, 242 F.2d 873, 877 (5th Cir. 1957)). In the absence of such a statement, indeed in the absence of any apparent basis for her personal knowledge of the relevant facts, Seckinger's declaration cannot provide the requisite foundation for the hearsay exception.

AO 72A
(Rev. 8/82)

The residual exception to the hearsay rule allows admission of hearsay statements not otherwise excepted if: (1) the statement has "circumstantial guarantees of trustworthiness" equivalent to the guarantees afforded by the specified exceptions, (2) it is offered as evidence of a material fact, (3) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts[,]" and (4) admission "will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807(a). "'Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (quoting *United States v. Ingram*, 501 F.3d 963, 967 (8th Cir. 2007)).

The Court might generously construe Seckinger's arguments concerning the difficulty of counterfeiting the Letter as asserting "circumstantial guarantees of trustworthiness." Nevertheless, the residual exception cannot apply here because he might have secured the necessary factual foundation for its admission under the business records exception (assuming that such foundation was possible at all), but did not. Thus, it is neither more probative "than any other evidence which the proponent can procure through reasonable efforts," nor does it possess circumstantial guarantees of trustworthiness

12

"equivalent" to the business records exception. Since, even liberally construing Seckinger's response, the Court can identify no applicable exception to the hearsay rule, it is not admissible and thus not part of the summary-judgment record.

### 2. Substance

Even if the Letter were admissible, however, it does not create a genuine dispute of material fact. To create such a dispute, it must support the inference that Equifax disclosed information about the disputed loan and omitted information about Seckinger's dispute. It simply does not. On its face, it indicates several reasons for Wells Fargo's denial of Seckinger's application. It is *possible* that those reasons include information about the disputed loan without the required dispute notice. In the absence of any contrary evidence, the Court might give Seckinger the benefit of such an inference.[7]

---

[7] Seckinger has submitted a declaration asserting that in "September 2016, Equifax provided Wells Fargo Bank a **Credit Report** containing the loan information in question. *Apparently*, Equifax failed to clearly note that the loan was disputed by the consumer and failed to provide my statement." Doc. 51 at 22 (emphasis added). Mrs. Seckinger provided a declaration including the same assertion verbatim. Doc. 48 at 5. However, as discussed above, there is no foundation for either Mr. or Mrs. Seckinger's personal knowledge of the grounds for Wells Fargo's denial of Mr. Seckinger's credit card application. *See supra* n. 2. It is not clear, therefore, whether their interpretive assertions can be considered at all.

Considering the Letter's plain text, it is far from "apparent" that the disputed loan factored into Wells Fargo's decision. *See* doc. 46 at 15-16 (stating that the credit

13

However, Equifax has offered evidence that precludes it.

Equifax has submitted an affidavit from one of its Legal Support Associates, stating (based on the affiant's review of Equifax's records concerning Mr. Seckinger) that "[o]n January 26, 2015, Equifax deleted the [disputed l]oan from Mr. Seckinger's Equifax credit file." Doc. 43-1 at 2, ¶ 13. The Letter indicates that the relied-upon credit score was "created" on September 6, 2016. Doc. 46 at 16. Given Equifax's

---

application was denied "for the following reasons: Late payments on accounts with other creditors (We look for a history of on-time payments)[;] Lack of recently reported open satisfactory accounts on your credit report[; and] Insufficient number of satisfactory accounts on credit report[.]"). It indicates that Wells Fargo considered Seckinger's numerical credit score, as determined by Equifax. *Id.* at 16. But it notes that the "[k]ey factors" in the report "that negatively affected [his] credit score [were]: [d]erogatory public record or collection filed[,] [p]roportion of balances to credit limits is too high on revolving accounts[,] [t]ime since delinquency is too recent or unknown [, and] [t]oo many consumer finance company accounts[.]" *Id.* Nothing on the face of the Letter, therefore, states that the disputed loan was included in the report and that the notice of dispute wasn't.

As Equifax points out, Seckinger could have directed discovery to Wells Fargo to illuminate the exact contents of the report it considered, *see, e.g.,* Fed. R. Civ. P. 30 (a)(1) (allowing a party to "by oral questions, depose any person," and that deponent's attendance may be compelled by subpoena); 31(a)(1) (allowing deposition by written questions and permitting deponent's attendance to be compelled by subpoena); 34(c) (allowing a party to compel a nonparty to produce documents or permit their inspection), but he chose to rest his case on "[t]he language contained within the [Letter which] is clear and concise." Doc. 50 at 7. The Letter's language may be "clear and concise," but, unexplained, it does not support the conclusion Seckinger seeks to draw from it.

14

employee's unrebutted testimony that reference to the loan, disputed or not, was removed in January 2015, it could not have factored into Wells Fargo's decision in September 2016. However, since the Letter's substance is inadmissible hearsay, the Court need not grapple with the precise inferences that may permissibly be drawn from the Letter itself.

## B. The Equifax Information

Seckinger argues that summary judgment should also be denied because he has provided an "Equifax Generated Credit Report of the Plaintiff dated December 4, 2014." Doc. 46 at 9. That document contains information about the loan, but no indication of the dispute. *Id.* It also, he argues, "shows that there were no less than *17 Credit Reports* . . . issued by the Defendant to various third parties and/or institutions during the time of Equifax receiving [sic] the Plaintiff's statement of dispute on January 19, 2014 and the . . . date" of the report issued to him. *Id.* at 9.

### 1. The December 4, 2014 Report

As to the document itself, Equifax argues that since it was issued to Seckinger and not to a third party, it cannot constitute a "consumer report" for which a dispute notice is required.[8] Doc. 49 at 7-10. It also disputes his construction

---

[8]    Equifax also asserts an evidentiary objection to the report.

AO 72A
(Rev. 8/82)

of the information it contains as reflecting reports to third

parties. *Id.* at 10-14. Seckinger replies that Equifax's

asserted distinction between "consumer reports" and "consumer

disclosures" amounts to an "introduc[tion] of synonyms to divert

attention from the irrefutable" fact that the document is a

"Credit Report." Doc. 50 at 10. He relies heavily on his

application of the Federal Trade Commission (the FTC) website's

description of a "credit report" in support of his

characterization. *See id.* at 11-13.

First, Seckinger's reliance on the FTC's description of a

"credit report" is misplaced. A federal agency's

---

*See* doc. 49 at 4-5. It points out that this document too is
"wholly unauthenticated by declaration or affidavit." *Id.* at 4.
Seckinger objects to the challenge, but as in the case of the
Letter, he fails to address the real evidentiary issue. *See*
doc. 50 at 15-18. The focus of Equifax's argument (although
they have not cited to it) is Fed. R. Evid. 901, which requires
the proponent of a piece of evidence to "produce evidence
sufficient to support a finding that the item is what the
proponent claims it is." Fed. R. Evid. 901(a). The Court is
not convinced that the document would be admissible, but also
cannot say that it would not. *See, e.g., In re Intern. Mgmt.
Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015) (noting that
the "authentication burden . . . is a light one" that can be met
"with circumstantial evidence of the authenticity of the
underlying documents"). To the extent that Seckinger relies on
its contents, it is also unable to identify any hearsay
exception which would allow the statements contained in the
document, even if the document were otherwise admissible, to be
admitted. It is possible, however, that such statements would
be non-hearsay statements by an opposing party. *See* Fed. R.
Evid. 801(d)(2). Since Equifax has responded substantively to
Seckinger's arguments and in consideration of his *pro se* status,
the Court will not rest its decision on the evidentiary issues.

16

interpretations of ambiguous terms in statutes which it is empowered to enforce are entitled to "deference" (*i.e.*, the Court is required to give them effect) when those interpretations are embodied in that agency's formal actions (*i.e.*, "a formal adjudication or notice-and-comment rulemaking"). *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *see also, e.g., Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S 837, 842-45 (1984) (discussing principles courts should apply to determine deference owed to an agency's interpretation of a statute it administers). Informal agency interpretations are not entitled to such deference. *See, e.g., Christensen*, 529 U.S. at 586-87. "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' . . ., but only to the extent that those opinions have 'the power to persuade,' [cit.]." *Id.* at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (citation omitted). Even then, an agency's interpretation is only entitled to deference when the term interpreted is ambiguous. *See Chevron, U.S.A., Inc.*, 467 U.S. at 842-43 ("If the intent of Congress is clear [*i.e.*, clearly expressed in the statute's text], that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

There is no evidence that the website Seckinger relies upon

AO 72A
(Rev. 8/82)

is (or is even based upon) the FTC's formal interpretation of the FCRA. *See* doc. 50 at 24-28 (printout of FTC webpage, without citation to any formally adopted regulation or formal adjudication). As such, that interpretation is relevant only to the extent that it has "the power to persuade," which here is not much. As discussed below, courts have considered the statutory language at issue,[9] and balanced against that authority the FTC's website has vanishingly little power to persuade.

Seckinger contends that Equifax' very invocation of the distinction between a "consumer report" and a "consumer disclosure" raises a question of fact, as he proposes to prove that the document is a "report" within the meaning of the FCRA. Doc. 46 at 10-11. As Equifax rightly points out, however, there is a *legal* -- *not factual* -- distinction between reports prepared for third parties and reports prepared for the consumer himself. *See* doc. 49 at 10; *Collins*, 775 F.3d at 1334 (discussing 15 U.S.C. § 1681a(d)(1)'s definition of "consumer report," and noting that "a 'consumer report' is communicated

---

[9] The fact that courts have undertaken to construe the statute's text implies that there is no ambiguity, as would require the Court to rely on administrative interpretation. After all, agency interpretation is only relevant "if the statute is silent or ambiguous with respect to the specific issue . . . ." *Chevron, U.S.A., Inc.*, 467 U.S. at 843. The judicial analysis suggests that, while perhaps complicated and confusingly articulated, the statutory definition of "credit report" and its relation to disclosures to consumers themselves is not ambiguous.

18

[to a potential third party creditor] by the consumer reporting agency . . ."); *Spector v. Equifax Info. Servs.*, 338 F. Supp. 2d 378, 379 (D. Conn. 2004) (discussing contents of a consumer's "credit file," and noting that "[w]hen released to a creditor, the file is termed a 'credit report' or 'consumer report'; when released to a consumer, the file is termed a 'consumer disclosure.'"); *Larson v. Trans Union, LLC*, 2013 WL 5665629 at *4 (N.D. Cal. Oct. 15, 2013) (report prepared for a consumer is "something separate and distinct from a 'consumer credit report' prepared for third parties" under the FCRA and that "[c]ourts expressly caution against conflating these two types of documents . . . ."); *see also Cousin v. Trans Union Corp.*, 246 F.3d 359, 367-68 (5th Cir. 2001) (recognizing that the argument that reports issued to consumer might not qualify as "consumer reports" "may be valid," but declining to consider argument because the issue was not properly presented to the trial court). The distinction applies regardless of what the documents are called. *Compare Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 246 n. 7 (3d Cir. 2012) (recognizing distinction between "consumer report" and "credit report"), *with Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) (recognizing distinction between "consumer report" and "consumer disclosure").

Since the information was provided to Seckinger, and not a

AO 72A
(Rev. 8/82)

third-party potential creditor, it cannot *itself* constitute a consumer report. *Johnson*, 510 F. Supp. at 645 (citing *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 449 (5th Cir. 1988)) ("Reports prepared solely for the consumer do not constitute 'consumer reports' under the FCRA."). Whether or not it includes a notice of Seckinger's dispute, therefore, the report itself does not create a dispute of material fact as to Equifax's alleged willful violation of the FCRA.

   *2. Evidence of further reports*

   Seckinger also contends that the document reflects other reports, provided to third parties, evidencing violations. *See, e.g.,* doc. 46 at 11-12. Equifax responds that the identified "reports," in fact, reflect "inquiries" to which it "it has no record of issuing consumer reports in response . . . ." Doc. 49 at 11. Equifax supports this contention by its employee's affidavit, stating that it "has no record of issuing a consumer report containing [information about the disputed loan] from January 19, 2014 to January 26, 2015." Doc. 49 at 14; doc. 43-1 at 3-4, ¶¶ 14-15. Seckinger replies that, since Equifax concedes it does not keep records concerning its responses to those inquiries, "the Defendant cannot adduce, by its own admission, any evidence that it did not issue FTC defined Credit Reports to the seventeen inquires." Doc. 50 at 14; *see also* doc. 43 at 3, ¶ 14 (stating that "[a]s a general matter, Equifax

AO 72A
(Rev. 8/82)

does not keep copies of consumer reports it issues . . . .").

Seckinger misconstrues the burden of proof. A plaintiff bears the burden of proving his claims. Rule 56 expressly allows a summary-judgment movant to support his assertion of an absence of any genuine dispute of material fact by, among other avenues, "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "The [summary-judgment] movant has the burden of showing that there is no genuine issue of fact, *but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict*." *Anderson*, 477 U.S. at 256 (emphasis added). In response to a properly supported summary judgment motion, "the plaintiff must present *affirmative evidence*" sufficient for a jury to return a verdict in his favor. *Id.* at 257 (emphasis added). When considered through the correct conceptual lens, Seckinger's argument fails.

In order to prevail on his claim, Seckinger must present admissible evidence sufficient to allow a jury to find that Equifax disclosed the disputed loan sometime after it received his notice, but willfully failed to include the required notation along with the disclosure. It is not enough if Equifax reported the disputed loan, at some time, or if Equifax omitted the dispute disclosure, if the loan itself was not also disclosed. Given Seckinger's specification of his claim, it is

21

not even enough that Equifax disclosed the loan and failed to disclose the dispute -- he must also show that it acted with the requisitely culpable state of mind. The disputed information would simply not allow a jury to infer that Equifax willfully violated the FCRA.

Seckinger only argues that the document "clearly shows that there were no less than 17 Credit Reports generated by the Defendant and passed on to various 3rd parties and institutions" during the relevant period. Doc. 46 at 11. There are, however, more than thirty "inquiries" listed in the cited section during the relevant period.[10] *See id.* at 26-27. Further, several of the entries appear to indicate Equifax-internal inquiries, while others appear to indicate inquiries to which only Seckinger's name and address would have been disclosed. *See id.; see also* doc. 49 at 12-13 (discussing the implications of the prefix identifiers in the list of inquiries). Seckinger does not indicate which of the entries makes the "clear" showing he asserts or how. From the document alone, no reasonable jury

_____

[10] Both Seckinger and Equifax appear to refer to the number of companies who made the inquiries, but neither discusses the separate "inquiries" identified by date. *Compare* doc. 46 at 11, *with* doc. 49 at 10 (referring to "the seventeen inquiries listed" in the document). The apparent distinction between inquirers and inquiries, *see* doc. 46 at 26-27 (listing "inquiries" and identifying *both* "Company Information" *and* "[i]nquiry [d]ate *(s)*" (emphasis added)), and the parties' failure to discuss it only emphasizes the attenuation of Seckinger's assertion of what the document "clearly shows."

could find in Seckinger's favor.

Seckinger might still prevail if nothing in the record directly precluded the inference that he wishes to draw. As explained above, however, Equifax's employee's unrebutted affidavit disposes of that possibility. The affidavit states that Equifax has "no record of generating a consumer report containing information about the [disputed loan] subsequent to its receipt of [Seckinger's notice of dispute], from January 19, 2014 through January 26, 2015." Doc. 43-1 at 4, ¶ 15. Seckinger might have investigated the information reported to the inquiring companies listed. He has apparently not done so. The record, therefore, contains no affirmative evidence that those responses disclosed the loan without also disclosing Seckinger's dispute. The fact that some response to the indicated inquiries was provided is simply not enough to raise a genuine dispute of material fact.

### III. CONCLUSION

For the reasons explained above, Equifax's motion for summary judgment is **GRANTED**. Doc. 44. The Clerk of Court is **DIRECTED** to prepare an appropriate order closing this case.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 27th day of March, 2018.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)